UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION NO.: 06-167-JGW

FRANK POE, et al.,                                                    PLAINTIFFS

V.

STATE FARM AND CASUALTY
COMPANY,                                                               DEFENDANT

MEMORANDUM OPINION AND ORDER

The parties have filed cross-motions for summary judgment in case, which are now ripe for disposition.[1]  Having reviewed the parties' motions, the court concludes that they should be denied without the necessity of oral argument because genuine issues of material fact remain in dispute on the record presented.  Therefore, the final pretrial conference scheduled for July 31 and the jury trial date of August 24, 2009 will remain as scheduled.

I.  Facts

Plaintiffs Frank and Gladys Poe ("the Poes") filed suit against their insurance company, defendant State Farm Fire and Casualty Company ("State Farm") when they were unable to resolve an insurance claim arising out of a July 21, 2005 fire that burned the Poes' Butler, Kentucky home to the ground.  The fire was initially deemed to be suspicious by the local fire department and therefore was immediately referred to the Suspicious Incident Unit ("SIU") of State Farm.  Due to that referral, the claim was not assigned to a local agent but instead was assigned to SIU Agent Paul Anglin, whose office was in Lexington, Kentucky.  Ultimately, arson was ruled out.  The cause of the fire was traced to Frank Poe's use of a turkey fryer that led

_____

[1] All parties have consented to disposition by the magistrate judge pursuant to 28 U.S.C. §636(c).

to a spill and ignition of hot oil.

The Poes assert that Anglin learned very early in his investigation that there was no evidence of arson and that the fire was accidental. However, plaintiffs admit that State Farm did not receive a "cause and origin" report from its retained investigator, John Heltman, until mid-October, 2005. On October 19, State Farm authorized payment of the Poes' claim.

On November 1, 2005, Anglin discussed settlement of the claim; however, Frank Poe disagreed with State Farm's stated valuation of the property which he believed to be too low. Frank Poe and Paul Anglin spoke again on November 4, 2005, and following that conversation State Farm forwarded a check for the contents of the home in the amount of $28,231.35. On November 14 and November 17, 2005, Mr. Anglin and Mr. Poe had additional conversations about the estimated cost to rebuild the home. State Farm requested detailed estimates from the Poes, which they agreed to provide.

By letter dated November 22, 2005, Anglin issued an actual cash value ("ACV") payment to the Poes in the amount of $138,478.60 payable to the Poes and their first and second mortgage companies. That sum was less than the total of the two mortgages combined and according to the Poes, substantially undervalued their home. However, payments for both the contents of the home and the ACV were made with State Farm's agreement that acceptance would not require execution or release of the Poes' claims. After receiving a contract for debris removal, Anglin forwarded an additional check in the amount of $6,538.10.

On November 30, 2005, Anglin received notice that the Poes had retained counsel. On October 1, 2005, Anglin confirmed in writing that the tendered ACV payment did not constitute a release of the Poes' claim and that State Farm would review and consider any itemized

2

estimates provided by the Poes.  Additional communication followed between Keith Johnson,

the Poes' counsel, and Anglin.  The Poes' attorney argued that builder's estimates relied upon by

State Farm for the initial ACV payment failed to reflect handicap access (Mr. Poe is disabled),

used the wrong square footage, and failed to incorporate building code changes.  Johnson also

disputed the rate of depreciation used by State Farm.  Johnson made a demand for the policy

limits plus the dwelling extension for a total of $215,710.   State Farm subsequently made a

supplemental payment of $26, 956.40.

　　　　Still dissatisfied, the Poes filed suit on July 20, 2006 for breach of contract, statutory bad

faith under the Kentucky Unfair Claims Settlement Practices Act, violation of the Kentucky

Consumer Protection Act, common law bad faith, and punitive damages.  After suit was filed the

parties participated in an appraisal process and settled the breach of contract claims, with State

Farm making a supplemental payment.  The statutory and common law bad faith claims, as well

as the claim for punitive damages, remain pending.

　　　　State Farm has moved for summary judgment on all claims.  The Poes have filed a cross-

motion for partial summary judgment, seeking a ruling that they have proven two of the three

elements of their bad faith claim under both the common law and the UCSPA.

**II.  Analysis**

**A.  Bad Faith Claims**

　　　　In a motion for summary judgment, a court must view the facts and any inferences that

can be drawn from those facts ... in the light most favorable to the nonmoving party. *Keweenaw*

*Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks

omitted). Summary judgment is only appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

In this instance, both parties have filed cross-motions concerning plaintiffs' bad faith claims.

> When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991).

*Lenning v. Commercial Union Ins. Co.* 260 F.3d 574, 581 (6th Cir. 2001).

To prove their claim for common law or statutory bad faith in Kentucky, the Poes must show: 1) that State Farm was obligated to pay the claim under the terms of the policy; 2) that State Farm lacked a reasonable basis in law or in fact to deny the claim; and 3) that State Farm either knew that there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The parties agree that State Farm was obligated to pay the claim, but disagree on whether State Farm's delay in payment and valuation of the claim was reasonable. The Poes argue that State Farm made numerous misrepresentations and "low-balled" its offers of payment, motivated by Anglin's ill will toward the plaintiffs and desire to save State Farm money.

4

**1. Plaintiffs' Motion for Partial Summary Judgment**

**a. Alleged Misrepresentations**

The Poes rely upon 15 separate statements or material omissions by State Farm that they allege constitute misrepresentations of "pertinent facts or insurance policy provisions" in violation of KRS §304.12-230(1). To insure completeness of the record, the alleged statements or omissions are briefly listed as follows:

1. State Farm failed to make advance payment for increased living expenses and erroneously told plaintiffs they were not entitled to go to a hotel.

2. Anglin did not inform the Poes he would pay for the bids of the contractors they chose or reimburse for expenses incurred to obtain necessary records such as tax returns.[2]

3. State Farm failed to disclose the basis for its conclusion that the Poes had no need for expense reimbursement for increased living expenses, when in fact that conclusion was based upon false information obtained by Anglin.

4. Anglin improperly refused to provide Frank Poe (who had vision problems) assistance in completing property inventory forms.

5. Anglin obtained bids for the cost of rebuilding from contractors associated with State Farm, actively misrepresented the relationship to the Poes.,

6. Anglin misrepresented the policy benefits as authorizing ACV.  Even though he later stated in the same conversation that the policy would pay the cost of rebuilding, he did not clarify that his first representation was incorrect

_____

[2]The plaintiffs concede in their reply memorandum that they have been unable to locate any policy or contractual provision that requires State Farm to make such payments.

5

7.  Anglin failed to advise the Poes that the bids that he obtained reflected a "hidden" discounted price on materials through State Farm's Premier Service Program ("PSP").

8.  Anglin improperly depreciated the replacement cost for two paintings and a ceramic angel.

9.  State Farm failed to advise plaintiffs of the availability of a State Farm Replacement Services program ("SFRS") that permits a policyholder to order personal property replacement at a discount and that assists the policyholder in ordering that property, in violation of State Farm's written procedures.

10.  Anglin falsely advised Frank Po that he was required to depreciate the Poes' property at the greater rate of either: a) 10% across the board or b) a category-by-category rate that could exceed 10%.

11.  Anglin "drop checked" the Poes with calculated underpayments, knowing that the Poes' two mortgages exceeded the amount of the tendered checks.  He also failed to advise the benefit of rebuilding using State Farm's discounted PSP service.

12.  Anglin falsely represented that code upgrades to the water line and septic system usually are not covered because "the policy is simply insuring the structure itself," when in fact the septic system and water line would have been covered under the express language of the policy as a "plumbing system" permanently attached to the home.

13.  Anglin stated that he did not know if the Poes had the "Ordinance/Law Endorsement" that pays for code upgrades and offered to check on that coverage, but failed to do so.

14.  Anglin misrepresented that he would have to check with his team whether he could

release copies of the building estimates on which State Farm was relying to value the property, and failed to "throughly explain the estimate" in violation of State Farm policy.

15. Anglin misrepresented that he was "locked into" a bid-estimate from one builder on grounds that two bids solicited by State Farm were very close to each other. Anglin omitted the fact that the bids required the builders to use the same software and discounted materials program.

A number of the above affirmative misrepresentations or omissions pertain to State Farm's written policies or to State Farm's stated practices, as opposed to express contractual provisions in the subject insurance policy. The rights of parties to an insurance policy are generally to be determined by the terms of the policy, unless contrary to existing law or public policy. *See generally State Farm Mutual Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). It is unclear whether Kentucky law supports a bad faith claim and/or an award of punitive damages based solely on the failure of the insurer to fully comply with internal policies and procedures. However, there is no question that at least some of the 15 alleged misrepresentations pertain directly to contractual provisions.

Both in State Farm's response to the Poes' motion and in its own motion for summary judgment, the defendant disputes that State Farm or its agent, Paul Anglin, made any of the alleged 15 misrepresentations. Both parties have adequately supported their fact-based arguments with references to the record. Extensive analysis is unnecessary. Suffice it to say that genuine issues of material fact remain as to the representations made by State Farm and its agent to the Poes and to their attorney both prior to and after litigation ensued. Therefore, the court will deny plaintiffs' motion for partial summary judgment on the issue of whether material misrepresentations were made.

### b. Compelling Insureds to Institute Litigation

For similar reasons, the court will deny plaintiffs' motion for partial summary judgment

on the issue of whether State Farm "compelled" the Poes to file suit in order to recover the benefits due under their insurance contract. KRS §304.12-230(7) prohibits insurers from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Plaintiffs argue that they are entitled to judgment on this claim based upon the undisputed fact that State Farm did not initially advise the Poes of the "appraisal process" provided in the policy and offered additional payment only after suit was filed. After suit was filed, State Farm suggested use of the appraisal process, which led to additional payment. The Poes received an increase payment of approximately 15% after filing suit. However, the mere fact that State Farm made an additional payment after suit was filed is not sufficient to demonstrate State Farm's bad faith.

### c. Alternative Basis for Denying Plaintiffs' Motion

In the alternative, the Poes' motion for partial summary judgment must be denied because it does not seek full judgment on the bad faith claims at all. Instead, the Poes seek the court's factual "ruling" that they have established a portion of their bad faith claims: 1) that State Farm made misrepresentations; and 2) that the misrepresentations compelled plaintiff to file suit. However, the Poes concede that a prerequisite to any statutory bad fath claim is proof that the defendant's conduct was "outrageous" either because of its evil motive or reckless indifference to the rights of others. *See Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). Plaintiffs acknowledge that disputed issues preclude a determination on this issue by the court, and that the jury will be required to determine whether State Farm acted intentionally or with reckless disregard for the rights of the plaintiffs. Doc. 76 at 1. Judgment as a matter of law simply cannot be granted on a claim for which plaintiffs have offered proof on only some of the necessary elements.

8

**2.  State Farm's Cross-Motion for Summary Judgment on Bad Faith Claims**

State Farm's own motion for summary judgment primarily argues that plaintiff cannot prove either 1) that State Farm failed to satisfy all obligations under the policy; or that 2) State Farm acted in bad faith or in reckless disregard for the rights of the plaintiffs.  State Farm asserts that its investigation into the possibility of arson was the sole reason for any initial delay in payment, and that such investigation was reasonable.  State Farm concedes that "had State Farm been more proactive it could have possibly...concluded its coverage investigation sooner," but contends that  "mere delay in payment does not amount to outrageous conduct." *See Motorists Mut. Ins. Co. v.* Glass, 996 S.W.2d 437, 452 (Ky. 1997).

Following confirmation of liability, State Farm argues that its communications and offers of payment were "prompt and reasonable" because its valuations were based upon estimates by "independent" contractors whereas plaintiffs submitted only general bids and failed to provide detailed estimates to support a higher claim.  As evidence of its lack of bad faith, State Farm notes that once plaintiff's counsel pointed out deficiencies in the insurer's estimates, State Farm reconsidered and made upward adjustments.   State Farm claims that any errors constitute "mere negligence at most" and that it had the right to challenge the Poes' claim because it was fairly debatable on the law and/or facts.

I conclude that State Farm is not entitled to judgment as a matter of law because the Poes do not assert a "mere delay in payment."  Rather, the Poes have offered indirect evidence that Anglin harbored a negative animus towards them due to his belief that the fire was caused by arson, and that he was motivated by a desire to pay less than the policy required.  Such indirect evidence of improper motive, viewed in favor of the Poes, includes multiple alleged misrepresentations and omissions, State Farm's delays in negotiating payment, Anglin's knowledge of the Poes' mortgages and their financial distress, and Anglin's overall course of dealing.  "Although matters regarding investigation and payment of a claim may be 'fairly

debatable,' an insurer is not thereby relieved from its duty to comply with the mandates of the [Act]." *Hamilton Mut. Ins. Co. Of Cincinnati v. Buttery*, 220 S.W.3d 287, 293 (Ky. App. 2007)(*quoting Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000). "An insurance company still is obligated...to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner." *Id.*

Because the evidence in the record demonstrates a genuine issue of material fact concerning State Farm's alleged bad faith, State Farm's motion for summary judgment will be denied. *Accord Estate of Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400 (6th Cri. 2005); *see also Jones v. Monumental Life Ins. Co.*, 502 F. Supp.2d 601 (E.D. Ky. 2007) (even though the court is not convinced that the plaintiff will ultimately be able to prove the intentional element of her bad faith claim, the issue must be submitted to the jury where plaintiff had submitted some evidence in support of its claim).

### 2.  Consumer Protection Act and Punitive Damages Claims

In addition to seeking judgment on the bad faith claims, State Farm's motion seeks judgment on plaintiff's claims under the Kentucky Consumer Protection Act on grounds that the defendant's conduct was not "unfair, false, misleading, or deceptive." For similar reasons, State Farm argues that the court should grant judgment as a matter of law to the defendant on plaintiff's punitive damage claims.

As explained with respect to the bad faith claims, the record reflects that genuine issues of material fact remain in dispute concerning State Farm's motivations and bad faith. Therefore, State Farm's motion for judgment on the Consumer Protection Act and punitive damage claims will also be denied.

### III.  Conclusion and Order

For the reasons stated herein, **IT IS ORDERED:**

1.  The parties' cross-motions for summary judgment [Doc. ##68, 69] are **denied**;

2.   The parties shall PROMPTLY contact Magistrate Judge Todd to reschedule a court-facilitated settlement conference as previously discussed by the parties and this court;

3.   The final pretrial conference set for July 31 and trial by jury set for August 24, 2009 shall remain as scheduled.  The parties are forewarned that due to the age of this litigation, **the trial date will not be moved.**

This the 17th day of July, 2009.

Signed By:

*J. Gregory Wehrman*   *J. G. W.*

**United States Magistrate Judge**

11